C. F. HAMBLEN, INC., v. LEE C. OWENS.

172 So. 694.
Opinion Filed February 12, 1937.

*E. N. Calhoun* and *Dunham & Meitin,* for Plaintiff in Error;

*MacWilliams & Upchurch,* for Defendant in Error.

TERRELL, ·J.—While engaged as a clerk in the hardware business of the plaintiff in error, defendant in error fell from a stepladder and received injuries from which he was forced to have his left leg amputated above the knee. He brought this action for personal injuries and recovered a judgment for $8,000.00 to which writ of error was prosecuted.

The first question we are urged to answer is whether or not the stepladder from which defendant in error fell was such a simple tool or appliance as to make him chargeable with knowledge of its defects, if any, equally with his master.

The common or simple tool doctrine is an exception to the rule requiring the master to inspect, repair, and keep in safe condition all tools and appliances furnished his servant to work with. The comparative knowledge of the master and the servant is the test of the master's liability for injury occasioned by the use of such tools and if they are simple in construction so that defects are apparent and may be discovered without special skill or knowledge and without intricate inspection, the servant is as well qualified as the master to detect defects and judge the danger of their use and being in his possession his opportunity to inspect is better than the master's. 18 R. C. L. 563.

In most jurisdictions the servant assumes the risk of injury from defects in what are commonly known as simple tools and appliances if he has had experience in the use of them. The master is under no obligation to inspect simple tools placed in the hands of his servant nor will he generally be held required to instruct the servant in the use of them.

In LaBatt on *Master and Servant,* Vol. 3, pages 2476, *et seq.,* many implements are classified in the category of simple tools, but no one has attempted to set out an all-inclusive definition of such an instrument. In most cases the facts of the particular case determine and classify them. A tool might be simple as to a given state of facts and quite different as to another state.

It does not follow in all cases that the master is absolved from liability for injury to his servant from the use of a simple tool, neither is the servant required to inspect the tools and appliances furnished him to seek out latent defects that would make their use hazardous. He is only required to look out for defects that are patent to ordinary observation, for all others he has a right to rely on his master to correct. Little Rock M. R. & T. R. Co. v. Leverett, 48 Ark. 333, 3 S. W. 50, 3 Am. St. Rep. 230,

Stepladders have been classified as simple tools or appliances, but this rule does not apply to all stepladders. The stepladder in question was eight feet high, according to the testimony, and the arms connecting the legs near the top were joined by a carriage bolt through a wood cylinder about four inches long. At the time of the accident defendant in error was taking stock and climbed up on a ladder, resting his left foot on the step next to the top. The nut came off the carriage bolt that ran through the wood cylinder connecting the two arms and this caused the ladder to become unsteady and fall against the shelving.

The right foot of defendant in error went down and his left foot passed over the step, holding him in that position until he could extricate himself. As a result the left leg was strained and bruised, and an infection set in requiring that it be amputated.

A ladder similar to the one from which defendant in error fell but only seven feet long was introduced in evidence. It was one of a number used about the store, was not assigned to anyone for particular use, was the general property and equipment of the store, was used by the clerks promiscuously and was used for rent to the patrons of the store. No one used it continuously and was responsible for its upkeep. The nut fastening the carriage bolt through the wood cylinder that holds the arms together was welded on and this was apparently the rule with reference to the use of all the ladders in the store.

Under such a state of facts which were clearly in issue, we cannot say as against the finding of the jury and the trial court that the defect in the stepladder was patent and should have been observed by the plaintiff. The ladder being one of several used promiscuously about the store, the clerks were not expected to keep it up, the defect in the carriage bolt was not readily discernible, and no one would suspect its dropping out of place under the circumstances. There is ample support for the verdict and judgment on this point.

After all the direct testimony was in the defendant tendered the following plea:

"Comes now the defendant, C. F. Hamblen, Inc., and for a further plea to each count of the plaintiff's declaration as the same now stand, and to each severally says that the injury and damage to the plaintiff as alleged and set forth in said count was not proximately caused by any negligence

on the part of the defendant, and that the proximate cause of the injury and damage to the plaintiff which resulted in the amputation and loss of plaintiff's left leg was the reactivation of a germ or germs harbored in the tissues of the plaintiff's left leg or in his body over a period of years dating back to a previous injury in April, A. D. 1919, to said left leg."

The trial court denied this plea and such is the basis for the second assignment of error.

The plea refused put in issue the question of whether the proximate cause of the injury to plaintiff was the negligence of defendant or resulted from a reactivation of the staphylococcus germ (known to produce periostoseitis, osteitis, and osteomyelitis) which had long been lurking in the tissues of his (plaintiff's) leg or body. A great deal of evidence was offered at the trial on both sides of this question and the tendered plea was designed to meet the issue thus made. Chicago City R. Co. v. Saxby, 213 Ill. 274, 72 N. E. 755; Smart v. Kansas City, 208 Mo. 162, 105 S. W. 709; Searles v. Manhattan Ry. Co., 101 N. Y. 661, 5 N. E. 66.

It is settled law that where injuries aggravate an existing ailment or develop a latent one the person whose negligence caused the injury is required to respond in damages for the results of the disease as well as the original injury. In such cases the injury is the prime cause which opens the way to and sets in motion the other cause and the latter cannot be regarded as an independent cause of injury, nor can the wrongdoer be allowed to apportion the measure of responsibility to the initial cause. The defendant must respond in damages for such part of the diseased condition as his negligence has caused and if there can be no apportionment, or it cannot be said that the disease would have ex-

isted apart from the injury, then his negligence is responsible for the diseased condition. 8 R. C. L. 437.

The evidence of defendant on this point was to the effect that when plaintiff was a boy some fourteen years prior to the injury in this case, he suffered from a fractured knee cap, that at the time he was operated on for osteomyelitis of the lower extremity of the femur, that he became symptomatically well, but that the germ of that disease would lie dormant or quiescent in the body or limb for as long as fifteen or twenty years and then become reactivated from injury or some other known or unknown cause.

If error was committed in denying the plea it was technical and harmless. The evidence affecting the plea was all admissible under the general issue and such error as was committed in refusing it was cured by the charge of the court to the effect that evidence on this point was admissible, but only in mitigation of damages. This was a correct charge in this case.

If there had been any positive evidence showing that plaintiff's injury resulted from a reactivation of the osteomyelitis germ independent of his fall from the stepladder, such a charge might have been improper, but there is no such evidence in this case. In the main the positive evidence supports the conclusion that the fall from the stepladder either generated the osteomyelitis germ that produced the injury or reactivated one already there that produced it. In either event under the rule as stated defendant would be liable. There was no basis in the evidence for a verdict in its favor.

From this view of the record it follows that the judgment below must be and is hereby affirmed.

WHITFIELD, BUFORD and DAVIS, J. J., concur.

ELLIS, C. J., and BROWN, J., dissent.

Brown, J. (dissenting).—This is a "simple tool" case. Should it not have been shown the defendant knew or ought to have known of the defect in the ladder? If the plaintiff could not detect the defect—if it was not apparent to ordinary observation—how could the defendant have detected it?