119 So.2d 40 (1960)
Mae E. WISE and Carl I. Wise, Her Husband, Appellants,
v.
Elizabeth CARTER, Appellee.
No. B-144.
District Court of Appeal of Florida. First District.
March 22, 1960.
Robert E. Hucker and Wayne E. Ripley, Jacksonville, for appellants.
Mathews, Osborne & Ehrlich, Jacksonville, for appellee.
FUSSELL, CARROLL W., Associate Judge.
This is an appeal by the husband and wife as plaintiffs below from an order of the lower court directing the jury to return a verdict in favor of the defendant, after the plaintiffs had rested their case.
The testimony offered on behalf of the plaintiffs, and which has not been controverted, *41 indicates that plaintiff had stopped her automobile at the intersection of city streets in Jacksonville, Florida, waiting for a green light, and that prior to placing her automobile in motion it was struck from the rear by the defendant's automobile, being driven at the time by the daughter of the defendant. Quite a jar resulted from this collision and plaintiff's automobile was shoved forward about one car length.
The evidence also shows that 22 days prior to the date of this collision plaintiff had sustained injuries from a fall in a furniture store, for which she was receiving medical treatment and, in fact, she was returning from the hospital where she had received such treatment at the time this accident occurred. Plaintiffs offered in evidence in the instant case the same bills for medical treatment and services which she claimed in a suit against the parties who owned the furniture store.
The lower court, prior to granting the motion for a directed verdict for the defendant stated: "I do not think you have sufficient proof for the jury to go in there and with any reason determine how much damage should be assessed against this defendant and it would be left entirely to the conjecture and guesswork of them, the jury, when the orthopedic expert called by you as a witness for the purpose of proving those things declined to answer those specific questions."
Counsel for appellee in seeking approval of the order and judgment of the lower court contends that the plaintiffs had failed to show the causal relation between the alleged damage and the alleged negligence, and also that the plaintiffs had failed to show the type of injury alleged to have been caused by the defendant's negligence, and that this had been left simply to the conjecture and speculation of the jury.
Apparently there is no contention, nor was there any decision on the part of the lower court, that the defendant had not been guilty of negligence.
In ruling upon the motion for directed verdict for the defendant, the lower court apparently decided either that
(1) There was no evidence from which the jury could determine that the plaintiffs had sustained injuries or damages as a proximate result of the admitted negligence of the defendant; or, that
(2) There was no evidence from which the jury could determine other than by pure conjecture or guesswork the amount of the damages or injuries sustained by the plaintiffs.
The daughter of the plaintiffs was a passenger in her mother's car at the time of the accident and testified as follows:
Tr. p. 13:
"A. * * * we were hit from behind, and it sounded just terrible, and an impact jarred us.
"Q. Did the impact move your car forward at all for any distance?
"A. Yes, we were about a car length. * * *
Tr. p. 14:
"Q. Was your mother injured in that accident when the car was hit from the back?
"A. Yes."
The plaintiff, Mrs. Wise, testified:
Tr. p. 35:
"Q. Did you experience any pain after that collision, Mrs. Wise?
"A. Yes, I did. * * *
Tr. p. 37:
"Q. Now, Mrs. Wise, after the accident with the Carter car was your pain better or worse?
"A. Well, it was hard to decide, because then, it was up through another portion. I was suffering from the lower *42 region, and then the accident happened in the upper portion. I have double trouble."
Dr. Lovejoy, who treated the plaintiff, Mrs. Wise, testified:
Tr. p. 112:
"Q. * * * Could you tell us what proportion or what percentage of the difficulty that you found with Mrs. Wise since you have been treating her, would be due to the store fall, and what portion or percentage to the automobile accident? I realize that is a difficult question, but it would help us all.
"A. Well, I would say that the injury from the store fall was more severe to the low back, while she has had low back pain since the automobile accident, I don't think it has been as severe as the neck complaint, or the injuries to the neck.
"She was actually under physical therapy treatment, both to the back and to the neck, at the time she had her automobile accident.
"Now, I think any decision percentagewise you make of it would be completely arbitrary, but I would say that the recurrent factor or the chronicity, or the length of time with the neck, is probably secondary to the automobile accident, and the type of injury involved in that particular type of accident, as against the jarring effect that she had from the fall, is the original. * * *.
"Now, since the second accident, she has had some tightness in the low back  the last time I saw her the muscles were a little tense. * * *.
"So, arbitrarily, I would say that the neck probably belongs to the one, and the back to the other. That's, of course, not entirely true."
It is our view that the above testimony alone, where uncontradicted, is sufficient for the jury to determine that the plaintiff, Mae E. Wise, sustained injuries from which she suffered which were caused directly by the negligent operation of defendant's car.
This brings us to a consideration of the second question and the principal argument of counsel for the appellee appears to be that the jury will be unable to determine with any degree of accuracy the amount of injuries or damages sustained by the plaintiffs which were the result of the instant accident rather than as a result of the prior injuries sustained just three weeks before, and that this would be especially true in this case because damages for injuries to the back and neck were claimed as a result of each of the two accidents. Great stress is laid on the fact, both by counsel for appellee and the lower court, that the expert doctor was unable to apportion the damages or to hazard any percentages as being the results of the two accidents.
If the law would prevent recovery in a situation of this kind, then it would mean, from a practical point of view, that the second tort-feasor would not be liable to those persons who were negligently reinjured  persons who were still suffering and had not recovered from prior similar injuries. This situation has already been considered by the Supreme Court of Florida and has been decided adversely to the contentions of the appellee:
9 Fla.Jur. p. 388, Damages:
"§ 45. Injuries Aggravated by or which Aggravate Pre-Existing Physical Condition.
"In an action for damages for personal injuries caused by a wrongful act or omission, the injured person is entitled to recover full compensation for all damage proximately resulting from the defendant's act, even though he is, at the time his injuries are received, suffering from some disease or illness which tends to aggravate the *43 injuries. Where the injuries received aggravate an existing ailment or develop a latent one, the person whose wrongful act caused the injury is required to respond in damages for the results of the disease as well as for the original injury. In such cases the injury is the prime cause which opens the way to and sets in motion the other cause, and the latter cannot be regarded as an independent cause of injury, nor can the wrongdoer be allowed to apportion the measure of responsibility to the initial cause. The defendant must respond in damages for such part of the diseased condition as his negligence has caused, and if there can be no apportionment, or if it cannot be said that the disease would have existed apart from the injury, then he is responsible for the entire damage."
In the case of Hamblen, Inc. v. Owens, 1937, 127 Fla. 91, 172 So. 694, 696, the court said:
"(4, 5) It is settled law that where injuries aggravate an existing ailment or develop a latent one the person whose negligence caused the injury is required to respond in damages for the results of the disease as well as the original injury. In such cases the injury is the prime cause which opens the way to and sets in motion the other cause and the latter cannot be regarded as an independent cause of injury, nor can the wrongdoer be allowed to apportion the measure of responsibility to the initial cause. The defendant must respond in damages for such part of the diseased condition as his negligence has caused and if there can be no apportionment, or it cannot be said that the disease would have existed apart from the injury, then he is responsible for the diseased condition. 8 R.C.L. 437."
The jury should apportion the damages, if they can do so, but if there can be no apportionment, then the defendant is liable for the entire damages.
Appellants also raise as a ground for reversal in this case the refusal of the lower court to admit in evidence the hospital and medical bills relative to treatment for these injuries.
Clearly the defendant is not liable for any damages or treatment suffered, incurred or sustained by the plaintiffs prior to the time when the accident in the instant case occurred. However, where there can be no apportionment between the two accidents, or where such apportionment is doubtful, the bills and statements for all such expenses and treatment incurred or which became necessary after the second accident, should be admitted in evidence for consideration by the jury.
Reversed, with direction that the lower court grant a new trial.
Reversed.
WIGGINTON, Chief Judge, and CARROLL, DONALD K., J., concur.